HALL & EVANS LLC
Kurt R. Bonds
(Nevada Bar No. 6228)
Madisyn Schaus
(Nevada Bar No. 17294)
1160 North Town Center Drive, Suite 330
Las Vegas, Nevada 89144
Telephone: 702-998-1022
bondsk@hallevans.com
schausm@hallevans.com
nvefile@hallevans.com
*Attorneys for Gurstel Law Firm, P.C.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SHAWN R. BROWN , | ) CASE NO.:  26-CV-00759-JAD-MDC |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| SPRING OAKS CAPITAL, LLC; SPRING OAKS CAPITAL SPV, LLC; and GURSTEL LAW FIRM, P.C. | ) ) ) ) |
| Defendant(s). | ) ) |

------------------------------------------------------------

**DEFENDANT  GURSTEL LAW FIRM, P.C.'S CORRECTED MOTION TO DISMISS ORIGINAL COMPLAINT WITH PREJUDICE**

COMES NOW, Defendant, GURSTEL LAW FIRM, P.C., by and through its attorneys, Hall & Evans, LLC, and hereby submits its Motion to Dismiss Complaint with Prejudice.

DATED  May 28, 2026          HALL & EVANS, LLC

/s/ *Kurt R. Bonds*
Kurt R. Bonds (Nevada Bar No. 6228)
Madisyn Schaus (Nevada Bar No. 17294)
Telephone: 702-998-1022
bondsk@hallevans.com
schausm@hallevans.com
nvefile@hallevans.com
*Attorney for Gurstel Law Firm, P.C.*

1

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

Defendant Gurstel Law Firm, P.C. ("Gurstel"), by and through undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted. As set forth below, Plaintiff's claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), are time-barred by the applicable statute of limitations and are otherwise legally deficient on their merits.

### I. INTRODUCTION

This action arises from Plaintiff's allegation that Defendants violated the FDCPA by purportedly failing to properly validate a consumer debt in 2023, and that the same alleged conduct constitutes a violation of the Nevada Deceptive Trade Practices Act and supports a claim of negligence per se. Plaintiff filed the instant Complaint in March 2026, well outside the FDCPA's one-year statute of limitations. See 15 U.S.C. § 1692k(d). Plaintiff's FDCPA claims are therefore time-barred on their face and must be dismissed.

Even assuming, arguendo, that Plaintiff's claims were timely—which they are not—dismissal is still warranted on the merits. Defendant Spring Oaks Capital, LLC  provided a full and complete verification response to Plaintiff's request, including documentation in the form of an activity billing statement and a charge off statement confirming the balance due and owing. The FDCPA does not require a debt collector to produce any particular documentation in response to a validation request, and this response satisfied all statutory obligations. Because there is no underlying FDCPA violation, Plaintiff's derivative state-law claims fail as well.

Plaintiff's NDTPA claim independently fails because debt collection activity by a debt buyer or debt collector is governed primarily by the FDCPA and is not a "trade practice" within the meaning of the NDTPA. Plaintiff's negligence per se claim fails for multiple independent

reasons: the FDCPA does not supply a standard of care for a Nevada negligence claim; there is no viable underlying FDCPA violation; and no fiduciary or special relationship exists between a debt collector and a consumer that could give rise to a common law duty of care. Dismissal with prejudice as to all counts is appropriate.

Notably, Plaintiff attached to the Complaint only a selective and incomplete excerpt of the verification response Spring Oaks provided. The complete verification response—which Plaintiff's own Complaint places directly at issue, attached hereto as **Exhibit A** to the Declaration of Sonia Chiriboga, demonstrates that Defendants fully satisfied their statutory obligations and that Plaintiff's selective presentation of the record is insufficient to sustain any of the claims asserted.

Finally, Plaintiff's claims are comprised of grievances directed solely to the Spring Oaks entities, not to Gurstel, a debt collection law firm that was assigned the collection of the account in September 2025, years after Plaintiff's dispute arose with the underlying account.

## II. FACTUAL BACKGROUND

Plaintiff vaguely and ambiguously contends that "Defendants" failed to adequately validate the debt in response to a written request for validation, and that "Defendants'" verification response was misleading as to the existence, amount, and legal status of the debt. Plaintiff asserts the same causes of action against Spring Oaks Capital SPV, LLC, the owner of the underlying credit card account, Spring Oaks Capital, LLC, the entity which was assigned the right to collect the debt, and Gurstel, the law firm hired by Spring Oaks Capital, LLC in 2025 to collect upon the debt. Plaintiff makes no specific allegation that either Spring Oaks Capital SPV, LLC or Gurstel failed to confirm the existence, amount, and status of the debt, or that Gurstel reported the debt to the credit reporting agencies.  In support of these allegations, Plaintiff attached to the Complaint a partial exhibit purporting to be "Defendants'" verification response

(the verification response partially attached to the Complaint as Exhibit 3 is a letter from Spring Oaks Capital, LLC, hereinafter "Spring Oaks").

However, Plaintiff's exhibit is incomplete and misleading. Plaintiff omitted critical documents that were provided as part of Spring Oaks' verification response, including the monthly billing statements confirming account activity and the balance. Spring Oaks' complete verification response is attached hereto as **Exhibit A**. Because Plaintiff's Complaint expressly references and relies upon Defendant's verification response, the complete response is incorporated by reference into the Complaint and is properly before this Court.  See Fed. R. Civ. P. 10(c)("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes");  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may also consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"), *cert. denied*, 126 L. Ed. 2d 655, 114 S. Ct. 687 (1994).  The complete response demonstrates that Spring Oaks provided full and accurate verification of the debt and that no misrepresentation of any kind was made.

With respect to the FCRA claim specifically, the disconnect between Plaintiff's allegations and his own attached documents is particularly striking. Plaintiff's FCRA cause of action—asserted in the body of the Complaint rather than in the factual background—contains a bare assertion that Plaintiff "disputed the account through the consumer reporting agencies." This allegation appears nowhere in the factual background section of the Complaint. Plaintiff does not allege, as a matter of pleaded fact, that he ever contacted Equifax, Experian, TransUnion, or any other consumer reporting agency. He does not identify which bureau received any dispute, when any such dispute was submitted, what the dispute said, or what response, if any, was received. The FCRA allegation is confined entirely to the legal conclusions section of the Complaint and is wholly unsupported by any factual predicate.

4

More tellingly, every document Plaintiff attaches to the Complaint tells the opposite story. All of the correspondence and dispute documentation Plaintiff submits as exhibits reflects direct communication between Plaintiff and Spring Oaks. There is no exhibit showing a dispute submitted to any consumer reporting agency. There is no CRA acknowledgment, no CRA investigation notice, and no CRA response letter[1]. The majority of the documentary record attached to the Complaint is consistent with a direct dispute to the furnisher, Spring Oaks, which, as a matter of law, does not trigger any duty under 15 U.S.C. § 1681s-2(b).

Moreover, the Complaint contains no specific allegations relating to Gurstel's role or conduct in this matter, instead referring only to Plaintiff's attempts to dispute the account with Spring Oaks, attaching documentation between Plaintiff and Spring Oaks, and referring to Gurstel only as a "debt-collection law firm" with nothing more.  Instead, the Complaint refers to "Defendants" throughout without specifically identifying to which entity he is referring. Accordingly, Plaintiff's claims cannot be sustained as to Gurstel. *Jackson v. ASA Holdings, LLC*, 751 F.Supp. 2d 91, 98 (D.D.C. 2010) (noting a consumer's complaint raising allegations under the FDCPA and fraud was deficient because it "is devoid of any specific allegations pertaining to the role that either ASA Holdings or Capital One played in the foreclosure of her properties," noting that plaintiff "makes all of her allegations against 'Defendants,' and sometimes against 'Defendant,' without specifically identifying to which entity she is referring.").

Plaintiff did not file the instant Complaint until 2026—more than one year after the alleged FDCPA violation and more than two years after any FCRA violation could plausibly have occurred—rendering Plaintiff's claims time-barred in any event.

---

[1] Complaint Exhibits 1-1 through 1-3 are purported credit reports from the three credit reporting agencies, noting that Plaintiff at one time disputed the debt in question.  However, these credit report notations are insufficient to establish when the disputes were submitted or whether Spring Oaks ever received the CRA notice triggering its investigation obligation.

### III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads factual content sufficient to allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that offers only labels, conclusions, or a formulaic recitation of the elements of a cause of action does not suffice. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice even when the allegations are cast in the language of the statute. *Id.* at 678-79.

The Supreme Court in *Iqbal* clarified the two-pronged approach to establish a sufficiently pled complaint. First, a court identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* at 679. Second, a court determines whether the remaining well-pleaded factual allegations plausibly give rise to an entitlement to relief. *Id.* Where a plaintiff does no more than recite statutory language or assert the legal conclusion that a defendant acted unlawfully, without alleging the underlying facts that would make such a conclusion plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss, a court may consider not only the allegations in the complaint, but also documents attached to the complaint, documents incorporated by reference, and documents that are central to the plaintiff's claims even if not formally attached. See Fed. R. Civ. P. 10(c)("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety…when ruling on …motions to dismiss, in particular, documents incorporated into the complaint by reference[.]"); *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 & n.4 (9th Cir. 1998), *overruled on other grounds* ("[Where] an attached

document is integral to the plaintiff's claims and its authenticity is not disputed, the plaintiff obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished."). Where a complaint's allegations establish that the claim is time-barred, dismissal under Rule 12(b)(6) is appropriate. See, e.g., *Jones v. Bock*, 549 U.S. 199, 215 (2007).

Dismissing claims with prejudice is proper where amending would be futile, including an amendment that involves an impermissible claim that would not survive a motion to dismiss. *In Allum v. Valley Bank*, 109 Nev. 280, 287, 849 P.2d 297, 302 (1993), the Nevada Supreme Court ruled it was not an abuse of discretion when the district court denied Allum's request for leave to amend his claim because such an amendment would be futile. The *Allum* Court adopted the futility exception in *Reddy v. Litton Industries, Inc.*, in which the Ninth Circuit affirmed a district court's denial of leave to amend when the allegations in the complaint made it clear that the movant's claims were not cognizable. 912 F.2d 291, 296 (9th Cir. 1990). Similarly, in *Halcrow, Inc v. Eighth Jud. Dist. Ct.*, 129 Nev. 394, 402, 302 P.3d 1148, 54 (2013), the Nevada Supreme Court affirmed the district court's denial of a leave to amend to add additional claims that were barred by the economic-loss doctrine, concluding that the movant "cannot assert claims of negligent misrepresentation against Halcrow" because his alleged damages were purely economic.

## IV. ARGUMENT

**A. Plaintiff's FDCPA Claims Are Barred by the One-Year Statute of Limitations.**

The FDCPA expressly provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d) (emphasis added). This one-year limitations period is strictly construed and is not subject to equitable tolling absent extraordinary circumstances not present here.

The alleged violations at issue in this case occurred back on August 28, 2023, when Plaintiff sent a written dispute and validation request, and then on September 22, 2023, when Plaintiff sent a follow-up request for verification.  See Complaint, ¶14-18. Plaintiff did not file this Complaint until March 16, 2026, more than two (2) years after the alleged violations. Plaintiff's claims are therefore time-barred on the face of the Complaint. Because the statute of limitations is apparent from the pleading itself, dismissal under Rule 12(b)(6) is appropriate without further proceedings. See *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019) (affirming dismissal of time-barred FDCPA claim).

Plaintiff bears the burden of pleading facts demonstrating that the limitations period was tolled or otherwise does not apply. No such facts are alleged in the Complaint. The action is untimely and must be dismissed with prejudice.

**B. The Court May Consider Defendant's Complete Verification Response Under the Incorporation by Reference Doctrine, and That Response Demonstrates Full Compliance with the FDCPA.**

Although a court ordinarily may not consider materials outside the pleadings on a Rule 12(b)(6) motion without converting it to a motion for summary judgment, there is a well-established exception: a court may consider documents that are referenced in the complaint, central to the plaintiff's claims, or attached to the complaint, even if the defendant—rather than the plaintiff—submits the complete version of the document.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (court may consider document "on which the complaint necessarily relies" even if not attached, provided the complaint refers to the document, the document is central to plaintiff's claim, and its authenticity is uncontested).

The rationale for this doctrine is straightforward: a plaintiff may not defeat a motion to dismiss by attaching only a cherry-picked portion of a document central to her claims while omitting portions that are unfavorable to her position. As the Ninth Circuit explained, incorporation by reference prevents a plaintiff from "surviving a Rule 12(b)(6) motion by

deliberately omitting . . . documents upon which their claims are based." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998, overruled on other grounds).

Further, where documents incorporated into or attached to the complaint contradict the allegations contained therein, the Court need not accept the allegations as true in ruling on a motion to dismiss.   See, e.g., *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit"); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citing *Sprewell*); see also *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations") (citing *Graue Mill*, 927 F.2d at 991); cf. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994) (concluding that when documents attached to a complaint contradict the allegations of the complaint, the document controls in a Rule 12(b)(6) motion to dismiss for failure to state a claim); *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment").

Other circuits are in accord. See, e.g., *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts may consider "documents incorporated into the complaint by reference"); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

Here, the verification response is unquestionably central to Plaintiff's claims:  it is the very

document Plaintiff alleges was deficient and misleading. Plaintiff expressly referenced Spring Oaks' verification response in the Complaint and attached a partial excerpt as an exhibit. The complete verification response, attached hereto as **Exhibit A**, is therefore properly before this Court. **Exhibit A** demonstrates that Spring Oaks' response included all documents omitted by Plaintiff from the Complaint's exhibit -- including the billing statements that confirm Plaintiff's use of the account, payment made, and the balance -- and that the response was accurate, complete, and not misleading in any respect.

**C.     Plaintiff's Claims Fail on the Merits Because Defendant Provided Verification of the Debt and the FDCPA Does Not Require Production of Any Specific Documentation.**

Even setting aside the timeliness and incomplete-exhibit issues, Plaintiff's FDCPA claims fail on the merits as a matter of law.

The FDCPA provides that, upon a consumer's written request for verification of a debt within the thirty-day dispute window, the debt collector must cease collection activities until it "obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b).

Critically, the FDCPA does not define what constitutes adequate "verification" of a debt, nor does it require a debt collector to produce any particular documentation or evidence in response to a validation request. Courts have consistently held that the verification requirement is minimal: a debt collector satisfies its obligation by providing the consumer with enough information to dispute the validity of the debt. See *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) ("Verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt."); *Mahon v. Credit Bureau of Placer Cnty., Inc.*, 171 F.3d 1197, 1203 (9th Cir. 1999) (holding that verification is sufficient

10

when the "nature and balance of the outstanding bill" is provided).

Here, Plaintiff confirms having received from Spring Oaks, "a generic statement indicating they were a debt collector," referring the Court to Complaint Exhibit 3, Spring Oaks's verification of the date dated September 12, 2023.  See Complaint, ¶ 17. However, Plaintiff alleges Spring Oaks's response was not "meaningful validation." *Id.* ¶ 16.   This is inaccurate. Spring Oaks verification of debt included more than just a "generic statement."  It included confirmation of the balance due, listed the name of the original creditor, and had attached supporting documentation in the form of an activity statement and charge-off statement, the latter of which Plaintiff, misleadingly, omitted from his Complaint.  See **Exhibit A**, Spring Oaks's complete verification response attached hereto.

Plaintiff further alleges that he sent a follow-up dispute on September 22, 2023 after Defendants failed to comply."  See Complaint ¶ 18.  Subsequently, in response to Plaintiff's duplicate demand for validation, Spring Oaks served two correspondences upon Plaintiff, advising that "we have reviewed your account and confirmed the name and amount owed on the account," and confirming no further response was necessary because the "previous dispute [was] substantially the same as [the] current dispute." These letters also included the requisite information required under the FDCPA, which is, simply, written confirmation that the debt is due an owing. See **Exhibit B** to the Declaration of Sonia Chiriboga, Spring Oaks's second verification response dated October 6, 2023.

Having provided verification, Spring Oaks satisfied its statutory obligations in full. As set forth in *Swartz,* the Court can consider the full verification response in ruling on this motion because Plaintiff's allegations refer to the verification of debt and Plaintiff attached an incomplete version of the verification to his Complaint.  Because the FDCPA imposes no requirement that a debt collector produce any particular documentation, and because Spring Oaks provided

11

verification[2], Plaintiff cannot state a claim for failure to validate.

As for Plaintiff's Demand for Immediate Deletion of Unvalidated Collection Account served on December 26, 2025, this demand did not revive the statute of limitations related to his allegation that the debt was not validated[3].  His original request for verification occurred on August 28, 2023 and Spring Oaks's verification response was served on September 12, 2023, therefore the one-year statute of limitations accrued from September 12, 2023, which expired on September 12, 2024.

Essentially, Plaintiff's unstated basis for claiming inadequate verification is that Spring Oaks failed to produce its Nevada collection agency license or other documentation as requested in his August and September 2023 validation requests.  This contention provides no support for an FDCPA claim. The verification provision of § 1692g exists for one purpose: to allow a consumer to dispute whether the debt itself is valid—its existence, amount, and the identity of the creditor. It is not a mechanism for auditing a debt collector's regulatory compliance or demanding production of its licensing documentation. The FDCPA contains no requirement, express or implied, that a debt collector produce the documentation Plaintiff has requested, including proof of state licensure, in response to a validation request.  Whether Spring Oaks holds a Nevada collection agency license is a matter governed exclusively by Nevada's collection agency licensing statutes, NRS Chapter 649, and enforced by the Nevada Financial Institutions Division: not by the FDCPA. A consumer's demand for licensure documentation as a condition of accepting verification has no basis in § 1692g and cannot transform an otherwise adequate verification response into a statutory violation. See *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999)

---

[2] Exhibit A to this Motion is the complete verification response. Exhibit 3 to Plaintiff's Complaint is the same verification letter with the omitted documentation referenced in the letter, to-wit: "Enclosed you will find documents associated with your account provided in response to your dispute and/or request for validation."

[3] In this letter, Plaintiff alleges Spring Oaks furnished an inaccurate address.  However, a review of Exhibit 1-1 to the Complaint demonstrates there are several addresses listed on his Experian report, which is aggregated data obtained from multiple creditors and cannot clearly be attributed solely to Spring Oaks.

(courts may not read documentation requirements into § 1692g that Congress did not include, noting the purpose of a verification of debt is to prevent "dunning the wrong person or attempting to collect debts which the consumer has already paid. There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt") (internal citations omitted)(emphasis added); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173-74 (9th Cir. 2006) (the FDCPA does not prescribe the form or content of a verification response beyond confirmation of the debt).

Accordingly, even on the merits, the Complaint fails to state a claim upon which relief can be granted and must be dismissed.

**D. Plaintiff's Nevada Deceptive Trade Practices Act Claim Fails as a Matter of Law.**

Plaintiff's claim under the Nevada Deceptive Trade Practices Act, NRS § 598.0923 et seq., fails for two independent and dispositive reasons: (1) the NDTPA does not apply to third-party debt collection activity, which is governed primarily by the FDCPA; and (2) there is no underlying deceptive act because Spring Oaks' verification response was accurate, complete, and not misleading.

1. Debt Collection by a Third-Party Debt Collector Is Not a "Trade Practice" Under the NDTPA.

The NDTPA prohibits "deceptive trade practices" in the course of a person's "business or occupation." NRS § 598.0915; §598.0916; §598.0917; §598.0918; §598.092; §598.0921; §598.09213; §598.0922; §598.09223; §598.09227; §598.0923; §598.09235; §598.0924; §598.0925. However, the statute is directed at commercial transactions involving the sale of goods or services to consumers: not at the downstream collection of debts owed to debt buyers. It also does not apply to issuing banks of a credit card, who merely facilitated the transaction between the consumer-purchaser and the vendor. Similarly, Spring Oaks does not sell goods or services to the consumer debtor directly; it collects a pre-existing obligation owed after the transaction

13

involving the sale of goods or services had been completed. The consumer's relationship to the debt buyer is not that of a purchaser of goods or services, and the debt collection activity is not a "trade practice" in the commercial sense the NDTPA contemplates, which governs transactions involving "goods and services" only; see *Dowers v. Nationstar Mortg.*, LLC, 852 F.3d 964, 972 (9th Cir. 2017) ("While the Supreme Court of Nevada has not settled this issue, we agree with the district court in predicting that the Supreme Court of Nevada would hold that real estate loans do not fall within the DTPA. The DTPA governs transactions relating to 'goods and services, and a real estate loan is neither a good nor a service within the meaning of this statute" (internal citations omitted)).

2. <u>No Deceptive Act Occurred.</u>

Even if the NDTPA applied, Plaintiff's claims would still fail because no deceptive act occurred. To state a claim under the NDTPA, a plaintiff must allege a deceptive trade practice as defined by the statute—including, as relevant here, conduct that constitutes a knowing misrepresentation or knowingly false statement. NRS § 598.0915. Plaintiff's theory is that Spring Oaks's verification response, or its reporting of the debt, was misleading as to the existence, amount, and legal status of the debt. But as demonstrated by **Exhibit A**, the complete verification response accurately confirmed all those particulars. Plaintiff's allegation of deception rests entirely on the cherry-picked partial exhibit attached to the Complaint; when the full record is considered, no misrepresentation of any kind is apparent. Because the Complaint fails to plausibly allege a deceptive act, the NDTPA claim must be dismissed.

**E. Plaintiff's Negligence Per Se Claim Fails as a Matter of Law.**

Plaintiff's negligence per se claim asserts that Defendant violated a statutory duty imposed by the FDCPA—a federal consumer protection statute—and that this violation constitutes negligence per se under Nevada law. This claim fails for three independent and dispositive

reasons.

1. <u>There Is No Underlying FDCPA Violation to Support a Negligence Per Se Theory.</u>

Under Nevada law, if a defendant violates a statute which was designed to protect a class of persons to which a plaintiff belongs, whose violation is the proximate cause of plaintiff's injures, then a claim for negligence per se can stand. *Barnes v. Delta Lines*, 99 Nev. 688, 690, 669 P.2d 709, 710 (1983). A negligence per se claim predicated on a statutory violation requires an actual violation of the predicate statute.

As demonstrated herein, Defendants did not violate the FDCPA. The complete verification response attached as **Exhibit A** demonstrates that Defendants provided accurate and sufficient verification of the debt, including documentation. There is no statutory violation upon which a negligence per se theory can be built. Because the predicate FDCPA claim fails, the negligence per se claim collapses as well and must be dismissed.

2. <u>No Duty of Care Exists Between a Debt Buyer/Debt Collector and a Consumer Debtor.</u>

An essential element of any negligence claim, including negligence per se, is the existence of a legal duty owed by the defendant to the plaintiff. Under Nevada law, a duty of care arises from a special relationship between the parties, such as landowner-invitee, businessman-patron, employer-employee, school district-pupil, hospital-patient, and carrier-passenger. *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 969, 921 P.2d 928, 930 (1996). The rationale for imposing liability in this context is because "the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other." *Id.*

A fiduciary duty arises only where there is a special relationship involving trust, confidence, and reliance beyond that inherent in a contractual relationship. *Hoopes v. Hammargren*, 102 Nev. 425, 431, 725 P.2d 238 (1986) ("The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, since the person in whom

15

trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party") (quoting *Barbara A. v. John G.*, 193 Cal.Rptr. 422, 432 (Ct.App. 1983)). Nevada Courts have recognized fiduciary relationships, such as between insurers and insureds (*Powers v. United Servs. Auto. Ass'n*, 115 Nev. 38, 41, 979 P.2d. 1286, 1288), attorneys and their clients (*Cook v. Cook*, 112 Nev. 179, 912 P.2d 264, 266 (Nev. 1996)), marital partners/fiancés (*Fick v. Fick*, 109 Nev. 458, 851 P.2d 445, 449-50 (Nev. 1993)), corporate officers or directors and their corporations (*Leavitt v. Leisure Sports Incorporation*, 103 Nev. 81, 734 P.2d 1221, 1224 (Nev. 1987)), and physicians and their patients (*Hoopes v. Hammargren*, 102 Nev. 425, 725 P.2d 238, 242 (Nev. 1986)).

No such duty of care or fiduciary relationship exists between a debt buyer or collector and a consumer debtor. The relationship between Defendants and Plaintiff is an arm's-length, adversarial collection relationship, not a fiduciary, professional, or special relationship that could give rise to a common law duty of care. Courts have consistently held that there is no fiduciary relationship between a creditor or debt collector and a consumer debtor. *Yerington Ford, Inc. v. Gen. Motors Acceptance Corp.*, 359 F. Supp. 2d 1075, 1090 (D. Nev. 2004) ("[T]he Court is satisfied that the Nevada Supreme Court would hold that an arms-length lender-borrower relationship is not fiduciary in nature, absent exceptional circumstances."), *aff'd in relevant part by Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir. 2007)..

The mere existence of a statutory obligation does not transform the collection relationship into a special relationship sufficient to support an independent tort duty.

Plaintiff alleges no facts showing that Defendants owed a duty of care to Plaintiff, nor does Plaintiff allege Defendants assumed any advisory role, exercised control over Plaintiff's affairs. Because Plaintiff pleads no facts alleging a cognizable duty of care or fiduciary relationship exists, Plaintiff's negligence per se claim fails as a matter of law and must be dismissed. See *Roberts v. Citibank, N.A.*, No. 2:24-CV-01375-GMN-MDC, 2024 WL 4818701,

16

at *5 (D. Nev. Nov. 18, 2024) ("[T]he [First Amended Complaint] fails to allege Citibank owed a fiduciary duty to Plaintiff" and "Plaintiff has not alleged any facts that could give rise to a special relationship or exceptional circumstances; therefore, this claim [for breach of fiduciary duty] likewise must be dismissed.")

**F.    Plaintiff's Claim under Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681 s-2 Fails as a Matter of Law.**

Plaintiff invokes 15 U.S.C. § 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), alleging that Defendants failed to conduct a reasonable investigation following a dispute. This claim is deficient on its face and must be dismissed for three independent reasons: (1) Plaintiff's only alleged dispute was made directly to Defendants —not through a consumer reporting agency—which is legally insufficient to trigger any duty under § 1681s-2(b); (2) the Complaint pleads the alleged dispute and deficient investigation in wholly conclusory terms that do not satisfy the pleading standards of *Iqbal* and *Twombly*; and (3) Plaintiff fails to allege when any dispute was submitted to a consumer reporting agency, making it impossible to assess whether the claim is timely or whether the statutory preconditions were ever satisfied.

1.  Section 1681s-2(b) Is Triggered Only by a Dispute Submitted Through a Consumer Reporting Agency-Not a Direct Dispute to the Furnisher.

This deficiency is fatal and dispositive. Section 1681s-2(b) imposes duties on furnishers of credit information only after they receive notice of a consumer dispute from a consumer reporting agency ("CRA"). The statute is explicit: the furnisher's obligations are triggered "after receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency[.]"15 U.S.C. § 1681s-2(b)(1). 15 U.S.C. § 1681i(a)(2) concerns notifications by a consumer reporting agency to a data furnisher. *Id*. (after consumer reporting agency receives notice of a dispute, "the agency shall provide notification of the dispute" to furnishers (§ 1681i(a)((2)(A)) and "the consumer reporting agency shall promptly provide" all relevant information received from

consumer to furnisher (§ 1681i(a)(2)(B)). A direct dispute communicated by the consumer to the furnisher does not satisfy this precondition and does not give rise to any duty to investigate under § 1681s-2(b).

The courts are uniform on this point. The Ninth Circuit has squarely held that § 1681s-2(b) applies only when a furnisher receives notice of a dispute from a CRA, not when the consumer disputes the debt directly with the furnisher. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009); accord *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002) (the statute limits duties imposed to situations where the furnisher has been contacted by a CRA). Every circuit to address the question has reached the same conclusion. See *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639-40 (5th Cir. 2002); *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 35 (1st Cir. 2010).

Here, the main evidence Plaintiff attaches to the Complaint is a direct dispute to Spring Oaks. Other than purported copies of his credit reports containing a notation that at one time Plaintiff disputed the debt, Plaintiff attaches no notice of dispute from any CRA, no CRA investigation correspondence, and no document confirming when the dispute was submitted to or processed by a CRA. Because the statutory trigger was never pulled, no duty arose, and Plaintiff's § 1681s-2(b) claim must be dismissed.

2. Plaintiff's Allegations Are Wholly Conclusory and Do Not Satisfy Iqbal/Twombly.

Even setting aside the threshold trigger problem, Plaintiff's § 1681s-2(b) claim is pleaded in impermissibly conclusory terms. The Complaint alleges Plaintiff "disputed the account through consumer reporting agencies" and that Defendants "failed to conduct a reasonable investigation." These are bare recitations of the statutory elements, not factual allegations. They tell the Court nothing about when the dispute was submitted, what information was provided to the CRA, what notice the CRA transmitted to Spring Oaks, what investigation Spring Oaks actually conducted,

or what specific aspect of that investigation was allegedly unreasonable.

A complaint must contain factual content that allows the court to draw a reasonable inference that the defendant is liable. A formulaic recitation that a defendant failed to conduct a "reasonable investigation"—with no supporting factual detail—is precisely the type of conclusory pleading that *Iqbal* and *Twombly* condemn. The § 1681s-2(b) claim must be dismissed for failure to plead facts sufficient to state a plausible claim.

3. <u>Plaintiff Fails to Allege When Any CRA Dispute Was Submitted, Precluding Assessment of Timeliness and Statutory Compliance.</u>

The FCRA's statute of limitations requires suit to be brought no later than two years after discovery of the violation or five years after the date the violation occurred. 15 U.S.C. § 1681p. Plaintiff does not allege when any dispute was submitted to a CRA, when any CRA transmitted notice to Defendant, or when Defendant's allegedly deficient investigation occurred. Without these foundational allegations, neither the Court nor Defendant can assess whether the claim is timely, whether the CRA properly transmitted the dispute, or whether the two-year discovery period has run.

This omission is not a minor pleading defect: it goes to the heart of whether a claim exists at all. Section 1681s-2(b) duties are event-triggered: they arise at a specific moment when a CRA transmits a dispute notice to a furnisher. Without alleging when that event occurred, or that it occurred at all, Plaintiff has not alleged a cognizable § 1681s-2(b) claim. The claim must be dismissed.

4. <u>Plaintiff's FCRA Claim Is Independently Barred by the Statute of Limitations.</u>

Even if Plaintiff could cure the pleading deficiencies identified above, which he cannot, his FCRA § 1681s-2(b) claim is independently time-barred on the face of the Complaint. The FCRA provides that a private action must be brought not later than the earlier of: (1) two years after the date of discovery by the plaintiff of the violation; or (2) five years after the date on which

the violation occurred. 15 U.S.C. § 1681p.

Plaintiff's own Complaint establishes that the underlying debt dispute arose in August 2023 (the initial dispute) and September 2023 (the duplicate dispute). If, as Plaintiff implicitly contends, he disputed the account with one or more consumer reporting agencies at or around the time of that dispute, then Spring Oaks's alleged failure to investigate would likewise have occurred in or around that same time (roughly September or October 2023), as the FCRA imposes an investigation period of 30 days after the furnisher receives notification of the dispute from the CRA dispute. 15 U.S.C. § 1681s-2(b)(2) (provides that furnisher must complete its investigation and report results back to the CRA within the same 30-day window the CRA has under § 1681i to complete the investigation). The Complaint was not filed until March 2026, more than two years after September or October 2023. Plaintiff's FCRA claim is therefore time-barred under the two-year limitations period of § 1681p.

Critically, Plaintiff's failure to plead when any CRA dispute was submitted cuts directly against him on this issue. Having omitted the date of his alleged CRA dispute entirely, Plaintiff cannot now invoke any tolling argument, because no facts suggesting delayed discovery are pled. Courts have consistently held that where a plaintiff is aware of the facts giving rise to an FCRA claim at the time they occur, as Plaintiff necessarily would have been when he himself submitted an alleged CRA dispute, potentially back in 2023, the two-year limitations period runs from that date, not from some later date of supposed legal discovery. *Mack v. Equable Ascent Fin., LLC*, 748 F.3d 663, 665-66 (5th Cir. 2014) (FCRA limitations period accrues when plaintiff knew or should have known of the underlying facts that give rise to a claim, not when a claimant discovers those facts constituted a legal violation); *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1110 (9th Cir. 2012) (affirming that the discovery rule does not permit a plaintiff who was aware of underlying facts to toll the running of the limitations period).

The FCRA claim is time-barred and must be dismissed with prejudice.

20

**G.      Plaintiff's Claim for Intentional Inflection of Emotional Distress Fails as a Matter of Law.**

In his final, equally conclusory cause of action, Plaintiff asserts a claim for intentional infliction of emotional distress ("IIED")—whether as a standalone cause of action or as part of his prayer for emotional distress damages—that claim fails as a matter of law and must be dismissed. Under Nevada law, a plaintiff asserting IIED must establish four elements: (1) the defendant engaged in extreme and outrageous conduct, with either the intention of , or reckless disregard for, causing emotional distress; (2) the plaintiff actually suffered severe or extreme emotional distress; and (4) the defendant's extreme and outrageous conduct was the actual or proximate cause of the distress. *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 92 (1981); *Olivero v. Lowe*, 116 Nev. 395, 398-99, 995 P.2d 1023, 1025 (2000); see also *Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 378, 989 P.2d 882, 886 (1999). Plaintiff's Complaint fails to satisfy any of these elements.

1.  Plaintiff Pleads No Extreme or Outrageous Conduct.

The threshold element of an IIED claim—extreme and outrageous conduct—sets a deliberately high bar. The Nevada Supreme Court has emphasized that the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Restatement (Second) of Torts § 46 cmt. d (1965).  In Chowdry, the Court noted that "[i]nsomnia and general physical or emotional discomfort are insufficient" to establish damages for an IIED claim, noting "[t]he less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress." *Chowdhry v. NLVH, Inc*., 109 Nev. 478, 483 (1993).

Plaintiff's Complaint identifies no conduct that comes remotely close to this standard. Plaintiff alleges he "suffered concrete harm including [r]educed creditworthiness, [l]ost financial

21

opportunities, [e]motional distress and reputational harm, and [t]ime and expense correcting inaccurate reporting." See Complaint, ¶ 23. This conclusory statement offers no details as to how, or why, Defendants conduct resulted in serious emotional distress and lacks any allegation as to sustaining any physical injury or illness.

The entire factual record before the Court consists of: a debt verification response that Plaintiff contends was incomplete; credit reporting that Plaintiff contends was inaccurate; and a dispute process that Plaintiff contends was not adequately investigated. Sending a debt verification response—even an allegedly deficient one—is ordinary, routine debt collection activity. It is not extreme. It is not outrageous. It is not beyond the bounds of decency. Courts applying Nevada law and the law of sister jurisdictions have consistently held that routine debt collection activity, including alleged violations of the FDCPA, does not constitute extreme and outrageous conduct sufficient to support an IIED claim. See

Because Plaintiff has not alleged—and cannot allege—any conduct by Defendant that rises to the level of extreme and outrageous behavior, the IIED claim fails at the threshold and must be dismissed.

2.  Plaintiff Pleads No Severe Emotional Distress or Physical Manifestation of Injury.

An IIED claim also requires that the plaintiff actually suffer severe or extreme emotional distress—not mere upset, inconvenience, embarrassment, or anxiety. See *Spradlin v. Mandarich Law Grp., LLP*, 2026 U.S. Dist. LEXIS 44114, *at 8 (D. Nev. Mar. 4, 2026) ("Significant emotional harm requires more than '[f]leeting or trivial anxiety or distress.'") (quoting *Dawson v. Wash. Mut. Bank*, 390 F.3d 1139, 1149 (9th Cir. 2004)). The Nevada Supreme Court has held that the distress must be "outside all possible bounds of decency" and "regarded as utterly

intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 953 P.2d 24, 26 (Nev. 1998). *Olivero*, 116 Nev. at 399, 995 P.2d at 1025. While Nevada does not categorically require physical injury as a prerequisite to an IIED claim, the courts look for objective evidence of genuine, severe distress, and complaints that offer mere vague, conclusory assertions of emotional harm, without any physical manifestation, medical treatment, or other corroborating allegation, routinely fail to state a plausible claim. See *Spradlin*, 2026 U.S. Dist. 44114, *at 8 (noting that corroborating medical evidence is one of the most important factors courts examine to determine if emotional distress damages have been established); *Dowers v. Nationstar Mortg.*, LLC, 852 F.3d 964, 972 (9th Cir. 2017) (holding that allegations relating to a lender or servicer foreclosing on a property without legal authority or possession of the original loan documents "does not meet the threshold of extreme and outrageous" conduct); *Nelson v. City of Las Vegas*, 99 Nev. 548, 555, 665 P.2d 1141, 1145 (1983) (holding dismissal of Nelson's complaint was appropriate because she failed to allege that the defendants intended or recklessly disregarded the causing of emotional distress to her or that defendants' conduct caused any physical injury or illness; see also *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010) ("We cannot conclude that a claim for emotional distress damages resulting from deceptive trade practices in connection with a failed real estate and lending transaction should be exempted from the physical manifestation requirement.").

Here, Plaintiff's Complaint contains no particularized allegation of emotional distress whatsoever. Similarly, Plaintiff is alleging deceptive trade practices, just like in *Betsinger*, where the Nevada Supreme Court stated physical manifestation was required to state a claim for IIED in the context of a business-related claim. He does not allege any psychological diagnosis, any medical treatment sought or received, any disruption to daily activities, any physical symptoms,

or any other concrete manifestation of distress. The "Damages" section of his claim includes a line item for "emotional distress damages," but the mere inclusion of a damages category in a prayer for relief, unaccompanied by any factual allegation of actual suffering, is precisely the type of conclusory pleading that *Iqbal* and *Twombly* forbid. A request for emotional distress damages is not an allegation of emotional distress. Because Plaintiff has pleaded no facts from which this Court could plausibly infer that he suffered severe emotional distress as a result of any conduct by Defendants, the IIED claim must be dismissed.

For the foregoing reasons, Plaintiff's IIED claim, whether asserted as a standalone cause of action or embedded in his "Injury" and 'Damages" sections of the Complaint for emotional distress damages, must be dismissed with prejudice.

**H.    The Complaint Fails in Its Entirety Because Plaintiff Pleads Nothing More Than Bare Statutory Elements—He Never Explains Why the Debt Was Disputed, Why the Verification Was Insufficient, or Why Any Reporting Was False or Misleading.**

Running through every count in the Complaint is a single, fundamental deficiency that is independently fatal to all of Plaintiff's claims: Plaintiff never explains the factual basis for his dispute. He does not allege that the debt is not his. He does not allege that the amount is wrong. He does not allege that the account was already paid, discharged, or settled. He does not identify any specific statement in Spring Oaks' verification response that was false. He does not point to any particular item in Spring Oaks' credit reporting that was inaccurate. He does not allege any fact—other than that he sent a dispute—that would allow this Court to infer that anything that any Defendant communicated or reported was incorrect in any way. Finally, he does not set forth in detail what damages he allegedly sustained, and especially fails to allege any physical manifestation of emotional distress damages to give rise to a claim of Intentional Infliction of Emotional Distress.

Instead, Plaintiff's Complaint consists entirely of conclusory recitations of statutory

language. He alleges that the debt "was not verified in accordance with the FDCPA"—but does not say what was missing or wrong about the verification provided. He alleges that the reporting "was false or misleading as to the existence, amount, and legal status of the debt"—but does not identify what was false, what the correct amount allegedly is, or what the actual legal status of the debt supposedly should be. He alleges that Defendant "failed to conduct a reasonable investigation" under the FCRA—but does not describe what a reasonable investigation would have revealed, what Defendant actually did in response to the dispute, or how the outcome of the investigation was wrong. These are not factual allegations. They are legal conclusions dressed in factual clothing, and under *Iqbal* and *Twombly* they are entitled to no presumption of truth. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555.

This pleading failure is particularly acute in the consumer protection context. Courts applying the FDCPA and FCRA have consistently held that a plaintiff must do more than echo the statutory standard—he must plead the factual predicate that makes a violation plausible. *See Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (FDCPA claim requires factual allegations showing the specific conduct that violated the statute, not merely that a violation occurred); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1158 (9th Cir. 2009) (plaintiff must allege facts explaining why the reported information was inaccurate, by describing the disputed transactions in detail, such as "the approximate date of the charges, their amount, and the identity of the merchant," not simply assert that an inaccuracy existed). The reason for this requirement is straightforward: without knowing why Plaintiff contends the debt was incorrectly verified or inaccurately reported, neither Defendant nor the Court has any basis to evaluate whether a violation plausibly occurred.

The same deficiency dooms Plaintiff's state law claims. To state a claim under the Nevada Deceptive Trade Practices Act, Plaintiff must allege a knowing misrepresentation of a specific fact. NRS § 598.0915. Plaintiff alleges none. He simply recites that Defendants' conduct was

25

"deceptive" without identifying any representation, let alone a false one. Similarly, negligence per se requires an actual statutory violation as its predicate; where the predicate violation is supported only by conclusory assertions, the negligence claim falls with it. A plaintiff cannot satisfy the plausibility standard by stacking one unsubstantiated legal conclusion atop another.

The deficiency cannot be cured by pointing to the partial exhibit Plaintiff attached to the Complaint. That exhibit shows only that Plaintiff sent a dispute to Spring Oaks directly. It says nothing about why Plaintiff believed the debt was inaccurate, incorrect, or misleading. It contains no factual contention about the amount of the debt, the identity of the original creditor, whether the debt had been paid, or any other substantive basis for disputing the obligation. The exhibit confirms only that a dispute was sent—not that any legitimate factual basis for the dispute existed. A bare dispute, standing alone, does not transform conclusory legal allegations into well-pleaded facts.

Indeed, to the extent Plaintiff's true grievance is that Spring Oaks did not produce its Nevada collection agency license or other documentation in response to his validation request, that contention affirmatively demonstrates that Plaintiff has no substantive dispute with the debt itself. The FDCPA's verification provision is concerned with one question: is this the right consumer, the right creditor, and the right amount? A demand for licensing documentation or any additional documentation is entirely independent to that inquiry. It does not put at issue the existence of the debt, the amount owed, the identity of the original creditor, or any other fact bearing on the validity of the obligation. A plaintiff who cannot articulate any basis for believing the underlying debt is incorrect, whose only stated grievance is the absence of non-statutory documentation, has not plausibly alleged that any representation by Spring Oaks was false or misleading, that any verification was inadequate, or that any credit reporting was inaccurate. This confirms what the face of the Complaint already reveals: Plaintiff has no substantive dispute with the existence or amount of the debt.  Instead, Plaintiff has attempted to manufacture claims by

faulting Spring Oaks for not producing documentation that the FDCPA simply does not require.

Compounding all of the above, Plaintiff's allegations are not directed at Gurstel at all. A review of the Complaint and its attachments makes plain that every allegation asserted relates to how the underlying account was handled by Spring Oaks; the terms of the debt, accuracy of the balance, and representations made in connection with the account. Gurstel is a downstream third-party debt collection law firm engaged years after the underlying account was assigned to Spring Oaks, and any dispute with Spring Oaks arose. Gurstel had no role in making any representations to Plaintiff in response to his debt-verification requests made to Spring Oaks in 2023 or the reporting of the debt by Spring Oaks: in fact, Gurstel does not report debts to the bureaus at all. The FDCPA does not make a third-party debt collector a guarantor of the creditor's or debt buyer's conduct, nor does it impose liability on a collection agency for disputes that existed between the consumer and the debt buyer before the account was placed for collection. A downstream debt collector is responsible only for its own collection conduct – not fore the history of the account before t arrived. Plaintiff has failed to identify any specific act or omission by Gurstel, as distinct from Spring Oaks, that violated any applicable statute or law. That failure is a further-and-independent basis for dismissal of all counts as to Gurstel.

Because Plaintiff has failed to plead any factual basis for his contention that the debt verification was deficient, that any credit reporting was false or misleading, or that any conduct by Defendant violated any applicable statute, all counts of the Complaint must be dismissed. No amendment is apparent that would cure this deficiency, as Plaintiff has had full opportunity to plead his best case and has offered nothing beyond statutory recitation. Dismissal with prejudice is appropriate.

### V. CONCLUSION

For the foregoing reasons, Gurstel respectfully requests that this Court dismiss Plaintiff's

Complaint with prejudice in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff's FDCPA claims are time-barred by the applicable one-year statute of limitations. In any event, the complete verification response—properly before this Court under the incorporation by reference doctrine—demonstrates that Spring Oaks (Gurstel took no part in the verification of the debt in 2023 or its reporting) fully complied with the FDCPA and made no misrepresentation as to the existence, amount, or legal status of the debt. Plaintiff cannot manufacture a claim by selectively attaching an incomplete exhibit to the Complaint.

Plaintiff's NDTPA claim fails because third-party debt collection activity is not a "trade practice" within the meaning of the NDTPA and is comprehensively governed by the FDCPA, and because no deceptive act occurred. Plaintiff's negligence per se claim fails because the FDCPA does not supply a standard of care for a Nevada tort action, there is no underlying FDCPA violation, and no duty of care—fiduciary, special, or otherwise—exists between a third-party debt collector and a consumer debtor.

Plaintiff's FCRA § 1681s-2(b) claim fails for four independent reasons: the sole evidence of any dispute is a direct communication to Spring Oaks, which cannot trigger § 1681s-2(b) as a matter of law; the claim is pleaded in wholly conclusory terms insufficient under *Iqbal* and *Twombly*; Plaintiff fails entirely to allege when any CRA dispute was submitted; and the claim is independently time-barred under the FCRA's two-year statute of limitations because the alleged dispute arose in 2023 and suit was not filed until 2026.

No amendment could cure these fundamental and overlapping defects across all counts. Dismissal with prejudice as to all claims is appropriate.

Most fundamentally, Plaintiff has failed to plead any factual basis for his belief that the debt was improperly verified, that any credit reporting was false or misleading, or that any conduct by Defendants violated any statute. Having recited only statutory elements without

factual support, Plaintiff has not stated a plausible claim under any theory. Dismissal with prejudice as to all counts is warranted.

DATED May 28, 2026                    HALL & EVANS, LLC

                                      /s/ Kurt R. Bonds
                                      Kurt R. Bonds
                                      (Nevada Bar No. 6228)
                                      Madisyn Schaus
                                      (Nevada Bar No. 17294)
                                      1160 North Town Center Drive, Suite 330
                                      Las Vegas, Nevada 89144
                                      Telephone: 702-998-1022
                                      bondsk@hallevans.com
                                      schausm@hallevans.com
                                      nvefile@hallevans.com
                                      *Attorneys for Gurstel Law Firm, P.C..*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of HALL & EVANS, LLC and that on the 28th day of May, 2026, I caused the above and foregoing Motion to Dismiss, to be served as follows:

[ X ]   By placing the same to be deposited in the United States Mail, in a sealed envelope upon which First Class postage was prepaid in Las Vegas, Nevada;

[ X ]   By electronic mail.

To the following Defendant(s) or attorney(s) listed below at the address, email address, and/or facsimile number indicated below:

Shawn R. Brown
10161 Park Run Dr., Ste 150
Las Vegas, NV 89145
shawn@sakuraent.com

*/s/ Allisen Vanausdal*
Signed by an Employee of Hall & Evans, LLC

30

## INDEX OF EXHIBITS

EXHIBIT A – Spring Oaks Debt Verification Response, dated September 12, 2023

EXHIBIT B – Spring Oaks Debt Second Verification Response, dated October 6, 2023