HALL & EVANS LLC
1160 North Town Center Drive, Suite 330
Las Vegas, NV 89144
Kurt R. Bonds (Nevada Bar No. 6228)
Madisyn Schaus (Nevada Bar No. 17294)
Telephone: 702-998-1022
bondsk@hallevans.com
schausm@hallevans.com
nvefile@hallevans.com
*Attorneys for Gurstel Law Firm, P.C.*
*Spring Oaks Capital SPV, LLC, and*
*Spring Oaks Capital, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SHAWN R. BROWN , | ) CASE NO.:  26-CV-00759-JAD-MDC |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| vs. | ) |
| | ) |
| SPRING OAKS CAPITAL, LLC; SPRING OAKS | ) |
| CAPITAL SPV, LLC; and GURSTEL LAW | ) |
| FIRM, P.C. | ) |
| | ) |
| Defendant(s). | ) |

---------------------------------------------------------

### DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Defendants Spring Oaks Capital, LLC and Spring Oaks Capital SPV, LLC (collectively "Spring Oaks") and Defendant Gurstel Law Firm, P.C. (together with Spring Oaks, "Defendants") hereby submit this responsive memorandum in opposition to Plaintiff Shawn R. Brown's ("Plaintiff") Motion for Leave to File First Amended Complaint Pursuant to FRCP 15(a)(2) and Local Rule IA 15-1 (ECF No. 19). Plaintiff's Motion should be denied because the amendment would be futile. The proposed first amended complaint ("PFAC," ECF No. 19-1) does not cure the fatal deficiencies that subject the Complaint to dismissal (see ECF No. 10, 15-

1

1) and entitle Spring Oaks to judgment on the pleadings (see ECF No. 17).

## STANDARD OF LAW

Rule 15(a)(2) of the Federal Rules of Civil Procedure directs that "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Although the Ninth Circuit's amendment policy is generous, particularly for pro se plaintiffs, the court need not grant leave to amend if amendment would be futile because a proposed claim fails to state a colorable claim for relief[.]" *Hines v. Dzurenda*, 2021 WL 3573634, at *1 (D. Nev. July 2, 2021) (*citing AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006)).

It is within the court's discretion to determine whether to grant leave to amend, and "[a] district court does not err in denying leave to amend where the amendment would be futile." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009). Futility "alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 809 (9th Cir. 2003). "An amended complaint is futile "where [it] would be subject to dismissal" under Rule 12(b)(6)." *Carvajal v. Clark Cnty.*, 539 F. Supp. 3d 1104, 1117 (D. Nev. 2021) (internal quotation marks and citation omitted); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). "When a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Chaset v. Fleer/Skybox Int'l, LP,* 300 F.3d 1083, 1088 (9th Cir.2002).

When evaluating whether a proposed amended complaint would survive a motion to dismiss, the court must accept as true "all well-pled factual allegations" but recognize that "legal conclusions are not entitled to the assumption of truth. Mere recitals of a claim's elements, supported only by conclusory statements, are insufficient." *Carvajal*, 539 F. Supp. 3d at 1117

2

(*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "The court must then consider whether the well-pled factual allegations state a plausible claim for relief. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. A complaint that does not permit the court to infer more than the mere possibility of misconduct has alleged—but not shown—that the pleader is entitled to relief, and it must be dismissed." *Id*.

## ARGUMENT

In support of their respective motions to dismiss and for judgment on the pleadings, and before seeing the PFAC, Defendants already argued that *any* amendment to the Complaint would be futile. *See* ECF No. 15-2, pp. 6-12; ECF No. 23, p. 4-6. Plaintiff foreclosed the possibility of a successful amendment by asserting, in the verified Complaint (ECF No. 2), facts that definitively doom his claims. Specifically, the Complaint explicitly and unambiguously alleges that both the alleged FDCPA violation and the alleged FCRA violation occurred, and were discovered by Plaintiff, in September 2023. *See* ECF No. 2, ¶14-18 ("On August 28, 2023, Shawn, via certified mail, sent a written dispute…"; "Shawn sent a follow-up dispute on September 22, 2023 **after Defendants failed to comply**" (emphasis added)). The Complaint makes clear that the alleged violations had already taken place at the time Plaintiff sent the September 22, 2023 "follow-up dispute." As Plaintiff alleges, "[d]espite the written dispute, Defendants continued **furnishing** the account." ECF No. 2, ¶19 (emphasis added). Thus, Plaintiff's claims are barred under the FCRA's two-year, and the FDCPA's one-year, statutes of limitations.

The PFAC fails to cure this defect. Though Plaintiff attempts to obfuscate the date that his claims accrued by removing certain details from the PFAC, it remains clear that Plaintiff's

claims accrued in September 2023. *See* ECF No. 19-1, ¶22 (alleging that Spring Oaks responded to Plaintiff's dispute on September 12, 2023, but "fail[ed] to provide competent validation while actively maintaining reporting on Plaintiff's credit reports"). This allegation establishes the accrual date for the PFAC's FDCPA and FCRA counts. The new allegations in the PFAC that Plaintiff submitted disputes to the CRAs in January 2026 do not change the fact that the cause of action originally accrued in September 2023.

However, even if the Court were to find that the PFAC's new claim that Plaintiff submitted disputes to the CRAs in January 2026 cures the FCRA statute of limitations issue, Plaintiff's FCRA claim still fails because the PFAC does not contain well-pled factual allegations that establish a plausible claim for relief.

Finally, Plaintiff's state law and negligence claims fail for all the reasons stated in Defendants' previous briefing, to which Plaintiff has never responded substantively.

## I.    The PFAC's FDCPA Claim Is Barred by the Statute of Limitations.

As Defendants previously argued (ECF No. 15-2, p. 8), "absent the application of an equitable doctrine," the statute of limitations "begins to run on the date on which the alleged FDCPA violation occurs[.]" *Rotkiske v. Klemm*, 589 U.S. 8, 10 (2019). "An action under the FDCPA may be brought 'within one year from the date on which the violation occurs.'" *Id*. (citing 15 U.S.C. § 1692k(d)).

The PFAC unambiguously alleges that Defendants engaged in "continuous collection activity" (ECF No. 19-1, ¶36) following the alleged failure to verify the debt in September 2023 (*id*. at ¶24 "without ever validating the debt, [Spring Oaks] continued active collection efforts by transmitting automated monthly updates to the CRAs…"). The PFAC, like the original Complaint, is perfectly clear that the alleged violation occurred in 2023, when Spring Oaks

4

allegedly failed to verify or validate. *E.g.,* ECF No. 19-1, ¶¶17-22; 24, 25, 26, 28, 29, 30 (all alleging actions taken by Defendants were violations of the FDCPA and/or FCRA because of the alleged lack of validation or verification).

Thus, the deadline for Plaintiff to bring an FDCPA claim was no later than September 2024. "[T]here is no 'continuing violation doctrine' in the FDCPA context, which would allow plaintiffs to sweep in a series of component acts that comprise a claim, if one of those acts was within the limitations period." *Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1044 (9th Cir. 2023) (internal quotation marks omitted). The FDCPA claims are time-barred on the face of the PFAC, and therefore, amendment would be futile as to Counts I, II, and III of the PFAC.

## II. The PFAC's FCRA Claim Is Barred by the Statute of Limitations.

As discussed in the preceding section, Plaintiff alleges that he discovered inaccuracies on his credit report in August 2023, disputed the information in August 2023, received a response from Spring Oaks in September 2023, and submitted a follow-up dispute in September 2023 because, as he alleges, "[Spring Oaks] continued active collection efforts by transmitting automated monthly updates to the CRAs[.]" ECF No. 19-1, ¶24. The limitations period for a claim under the FCRA is the earlier of two years after the date of discovery by the plaintiff of the violation or five years after the date on which the violation occurred. 15 U.S.C.A. § 1681p. Plaintiff discovered the alleged violation in August 2023, and therefore, the statute of limitations expired in August 2025.

Plaintiff alleges, citing no authority, that his subsequent disputes (including the newly alleged January 2026 disputes to the CRAs) regarding the data that Plaintiff originally disputed in August 2023 and Defendants' continued furnishing of that data constitute an ongoing violation that extends the statute of limitations. This contention is without merit. A court in this

District, as well as other courts around the country, have held that "additional reports such as these cannot restart the limitations period because to do so would allow plaintiff to indefinitely extend the limitations period by simply sending another complaint letter to CRAs, which undermines the statute of limitations set by Congress." *Galicia v. PlusFour, Inc.*, 2018 WL 3543039, at *3 (D. Nev. July 23, 2018); *see also Bittick v. Experian Info. Sols., Inc.*, 419 F. Supp. 2d 917, 918-919 (N.D. Tex. 2006); *Hancock v. Charter One Mortg.*, No. 07-15118, 2008 WL 2246042, at *2 (E.D. Mich., May 30, 2008) (holding that subsequent dispute letters regarding the same erroneous information does not restart the statute of limitations period when plaintiffs knew of the errors on their credit report more than two years before they filed suit); *Blackwell v. Capital One Bank*, No. 606CV066, 2008 WL 793476, at *3 (S.D.Ga., Mar. 25, 2008) (holding that permitting claims to go forward on the basis of subsequent complaint letters would allow plaintiffs to indefinitely extend the limitations period and render it a nullity, "an anomalous result").

These cases are directly applicable here, where the PFAC transparently adds an allegation of an additional dispute within the statute of limitations period in an attempt to nullify the statute of limitations. This proposed amendment is futile because "subsequent reports disputing [the account] do not constitute discrete events such that they would toll or re-start the statute of limitations." *Galicia*, 2018 WL 3543039 at *4.

### III.    The PFAC's FCRA Claim Fails to Plausibly Allege a Claim for Relief.

The PFAC's FCRA claim also fails to state a plausible claim for relief, even if it was not barred by the statute of limitations. Plaintiff alleges that Defendants "certified the account as fully verified" (ECF No. 19-1, ¶45), "certif[ied] to the CRAs that the full account balance…was verified" (*id.* at ¶46), and fail[ed] to … mark the trade line as a permanently

unvalidated bulk asset" (*id*. at ¶48).

Plaintiff appears to be alleging a failure to mark the account as disputed, because Defendants are not aware of any FCRA violation arising out of a failure to categorize an account as a "permanently unvalidated bulk asset." But Plaintiff's own exhibits to the PFAC show that the account *is* marked as disputed. *See* ECF No. 19-1, p. 18 ("Account information disputed by consumer"), p. 20 ("Consumer disputes this account information").

Moreover, the PFAC fails to cure deficiencies identified in Gurstel's motion to dismiss. *See* ECF No. 15-1, p. 18-19, incorporated here by reference. Plaintiff's allegations are wholly conclusory and do not satisfy the *Iqbal/Twombly* pleading standard. While Plaintiff has added the vague "January 2026" allegation regarding a subsequent report to CRAs, Plaintiff still fails to allege any facts that would allow the Court to assess whether Defendants conducted a reasonable investigation, such as what information Plaintiff provided to the CRAs and what information the CRAs provided to Defendants.

### IV.    The PFAC's State Law and Negligence Claims Fail

The PFAC makes no attempt to address the defects present in the original Complaint's Nevada Deceptive Trade Practices Act ("NDTPA") claim. As argued in Gurstel's Motion to Dismiss and Spring Oaks' Motion for Judgment on the Pleadings, the NDTPA is triggered by the sale or lease of goods or services and is not triggered by violations of the FDCPA or FCRA. *See* ECF No. 15-1, § D(1)-(2) (pp. 13-14); ECF No. 15-2, §III(c) (pp. 10-11), incorporated herein by reference.

The PFAC similarly fails to cure the primary defect with Plaintiff's negligence claim: there is no legal duty owed by any Defendant to Plaintiff. Debt collectors do not have a duty of care or fiduciary duty to debtors. Y*erington Ford, Inc. v. Gen. Motors Acceptance Corp.*, 359

F. Supp. 2d 1075, 1090 (D. Nev. 2004). Plaintiff has never addressed this issue.  Therefore, all of Plaintiff's claims remain deficient and subject to dismissal.

## V. CONCLUSION

Spring Oaks respectfully requests that this Court deny Plaintiff's motion for leave to file the PFAC.

## CERTIFICATION

I certify that Artificial Intelligence was not used to prepare the foregoing document.

DATED June 17, 2026                HALL & EVANS, LLC

/s/ *Madisyn Schaus*
Madisyn Schaus  (Nevada Bar No. 17294)

*Attorney for Gurstel Law Firm, P.C.,*
*Spring Oaks Capital SPV, LLC, and*
*Spring Oaks Capital, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of HALL & EVANS, LLC and that on the 17th day of June, 2026, I caused the above and foregoing Joint Opposition to Plaintiff's Motion for Leave to File First Amended Complaint, to be served as follows:

[ X ]    By placing the same to be deposited in the United States Mail, in a sealed envelope

upon which First Class postage was prepaid in Las Vegas, Nevada;

[ X ]    By electronic mail.

To the following Defendant(s) or attorney(s) listed below at the address, email address, and/or

facsimile number indicated below:

Shawn R. Brown
10161 Park Run Dr., Ste 150
Las Vegas, NV 89145
shawn@sakuraent.com

/s/Allisen VanAusdal
Signed by an Employee of Hall & Evans, LLC